**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**UNITED STATES OF AMERICA**

        -against-

**MORDECAI ABRAHAM SORCHER and**
**SROYA SORCHER,**

        **Defendants.**
-----------------------------------------------------------x

**OPINION AND ORDER**
**05-CR-0799 (NG) (RLM)**

**GERSHON, United States District Judge:**

Defendants Mordecai Abraham Sorcher and Sroya Sorcher face charges stemming from their alleged fraud of the National School Breakfast and Lunch Program. Defendants move to dismiss all five counts of the Second Superseding Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, on the ground that the statute of limitations has expired. For the reasons set forth below, defendants' motion is denied.

## I. BACKGROUND

The Second Superseding Indictment, like the original indictment, describes the federal program which defendants are charged with defrauding. It charges that Yeshiva Gedolah Academy ("YGA") is a not-for-profit private educational institution located in Brooklyn, New York. Mordecai Abraham Sorcher was the Director of YGA, and Sroya Sorcher served as President and an administrator. YGA was a participant in the National School Breakfast and Lunch Program, which provides funding and bulk food to participating institutions for students whose families satisfy specified income requirements.

The United States Department of Agriculture ("USDA") is responsible for implementing the National School Breakfast and Lunch Program, pursuant to the National School Lunch Act, 42

U.S.C. §§ 1751 *et seq.* In New York, the program is administered by the New York State Department of Education ("NYSDOE"). For a student to be eligible to receive meals under the program, parents are required to complete an application certifying the number of school-age children in the family, as well as the family's income. The head of the participating institution is required to sign the application and keep it on file at the school. The NYSDOE also requires participating institutions to file monthly claim forms detailing the number of meals provided to eligible students. The Board of Jewish Education ("BJE"), a not-for-profit organization, acts as a consultant for certain participating institutions, including YGA. For a small fee, the BJE assists schools with their submission of reimbursement claims by reviewing the claim forms, and, without making any substantive changes, ensuring that the claims conform to the proper format prior to forwarding them to the NYSDOE. The BJE also collects and disburses funds, and coordinates delivery of bulk food to participating schools.

Defendants were originally indicted on October 20, 2005. Count One of the indictment charged that, between May 1997 and September 1, 2001, defendants conspired to defraud the School Breakfast and Lunch Program, in violation 18 U.S.C. § 371. Count Two charged that, between May 1997 and September 1, 2001, defendants defrauded the School Breakfast and Lunch Program, in violation of 42 U.S.C. § 1760(g). Counts Three, Four, and Five charged that, on or about September 1, 2001, defendants made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2). Each count of the indictment incorporated by reference all of the factual allegations set forth in paragraphs one through fourteen.

By motion dated November 13, 2006, defendants sought dismissal of the indictment on

statute of limitations grounds.[1] In its opposition, the government indicated that, with respect to Counts Three, Four, and Five, the indictment incorrectly stated that the date the fraudulent family application forms were signed was September 1, 2001. In fact, the date on the forms was September 1, 2000, a date clearly outside of the statute of limitations. However, the government argued that defendants violated 18 U.S.C. § 1001(a)(2) "as a result of giving . . . field inspectors the fraudulent School Breakfast and Lunch Program application forms in December 2000." Gov't Opp. to Defs.' Pre-trial Motions at 10. Furthermore, the government stated that it would "move to amend the indictment prior to the start of trial, to reflect the accurate date." *Id.* at 10 n.3.

At oral argument on defendants' motion to dismiss, the government reiterated that, with respect to Counts Three, Four, and Five, the correct date was December 2000, not September 1, 2001 or September 1, 2000. *See* Oral Argument Transcript, Feb. 7, 2007, ("OA Tr. I") at 6-7. The court declined the government's request to "amend" the indictment and determined that, if the government sought to change the dates in the indictment to December 2000, it would have to do so by obtaining a superseding indictment. *See* OA Tr. I at 6-9. By order dated February 9, 2007, the court sustained Count One, ordered supplemental briefing on Count Two, and dismissed Counts Three, Four, and Five on statute of limitations grounds, relying on the government's acknowledgment that the September 1, 2001 date in those counts was based upon an error, and that the true date on the documents to which the indictment referred was September 1, 2000. On March

---

[1] The applicable statute of limitations states:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

18 U.S.C. § 3282.

19, 2007, the government filed a First Superseding Indictment.

On April 9, 2007, the government filed a Second Superseding Indictment.[2] Count One charges that, between May 1997 and July 2001, defendants conspired to defraud the School Breakfast and Lunch Program, in violation of 18 U.S.C. § 371. Count Two charges that, between May 1997 and July 2001, defendants defrauded the School Breakfast and Lunch Program, in violation of 42 U.S.C. § 1760(g). Counts Three, Four, and Five charge that, on or about December 27, 2000, defendants made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2). Each count of the indictment incorporates by reference all of the factual allegations set forth in paragraphs one through sixteen. Defendants now move to dismiss all five counts of the Second Superseding Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, on the ground that the statute of limitations on these offenses has expired.

## II. DISCUSSION

The purpose of statutes of limitations is "to protect individuals from having to defend themselves against charges when the basic facts may have been obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970). Thus, the primary concern is whether the defendant had notice of the charges against him, such that he knows that he "will be called to account for [his] activities and should prepare a defense." *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976); *United States v. Frequency Elecs.*, 862 F.Supp. 834, 844 (E.D.N.Y. 1994) ("So long as the

---

[2] At oral argument, the government explained that it filed a Second Superseding Indictment for the sole purpose of correcting a grammatical error in the First Superseding Indictment. *See* Oral Argument Transcript, June 18, 2007 ("OA Tr. II") at 16.

4

defendants may be said to have been put on notice of the criminal acts they are alleged to have committed in order to allow them to prepare adequately a defense to the same, the protective purposes of the criminal statute of limitations will have been served."). In criminal cases, statutes of limitations are "to be liberally interpreted in favor of repose." *United States v. Scharton*, 285 U.S. 518, 522 (1932); *see United States v. Marion*, 404 U.S. 307, 322 n.14 (1971) (discussing the policy in favor of repose).

Once an indictment has been filed, the statute of limitations is tolled with respect to the charges contained in the indictment. *United States v. Ben Zvi*, 242 F.3d 89, 98 (2d Cir. 2001); *United States v. Gengo*, 808 F.2d 1, 3 (2d Cir. 1986); *Grady*, 544 F.2d at 601. "[A] superseding indictment that supplants a pending timely indictment relates back to the original pleading and inherits its timeliness as long as the later indictment does not materially broaden or substantially amend the original charges." *United States v. Salmonese*, 352 F.3d 608, 622; *see Gengo*, 808 F.2d at 3; *Grady*, 544 F.2d at 601-02. "In determining whether a superseding indictment materially broadens or amends the original charges, [the court] will consider whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *Salmonese*, 352 F.3d at 622. The Second Circuit has stated that "[n]o single factor is determinative; rather, the 'touchstone' of our analysis is notice." *Id.*

Defendants renew their argument that the original indictment was time-barred and therefore was not "validly pending" at the time the Second Superseding Indictment was filed. *See Grady*, 544 F.2d at 601-02. Defendants further argue that the Second Superseding Indictment is untimely as it does not relate back to the date of the original indictment because it materially broadens or

5

substantially amends the original charges. And, as to Counts Three, Four, and Five, defendants argue that, under 18 U.S.C. § 3288, the dismissal of those counts bars reindictment.

## A. Count One

Count One of the original indictment charged that, between May 1997 and September 1, 2001, defendants conspired to defraud the School Breakfast and Lunch Program, in violation 18 U.S.C. § 371. Indictment ¶ 16. According to the indictment, defendants filed fraudulent claim forms through January 2001, and received reimbursements through the July 2000-June 2001 school year. Indictment ¶¶ 12-13. The indictment alleged four overt acts, occurring on or about May 29, 1997, June 20, 1998, May 20, 1999, and October 1, 2000, respectively. Indictment ¶¶ 17a-d. None of these overt acts, however, are within the statute of limitations. Defendants therefore argue that Count One of the original indictment was time-barred for failure to allege an overt act within the statute of limitations.

The Second Superseding Indictment changes the end date of the conspiracy from September 1, 2001 to July 2001, both dates being within the statute of limitations, and it is clear from the factual allegations in the introductory paragraphs of the original indictment that criminal acts well within the limitations period were charged. The original indictment alleged that defendants defrauded the School Breakfast and Lunch Program by filing fraudulent claims for reimbursement as late as January 2001. Indictment ¶ 12. The original indictment also alleged that defendants received funds, based upon their fraud, as late as June 2001. Indictment ¶ 13. Both the January 2001 and the June 2001 dates are within the statute of limitations and are earlier than the September 1, 2001 date provided as the end of the conspiracy. These paragraphs were "realleged and incorporated as if set forth fully" in Count One. Indictment ¶ 15.

6

In the Second Circuit, a conviction can be sustained even if the overt act proved at trial was not alleged in the indictment, so long as it was within the statute of limitations, and there is no prejudice to the defendant. *Salmonese*, 352 F.3d at 620 (citing *United States v. Frank*, 156 F.3d 332, 339 (2d Cir. 1998)). The issue presented here is whether, in a pre-trial motion to dismiss, a conspiracy charge that does not expressly allege a timely overt act designated as an "overt act" in the indictment must be dismissed even where acts that would meet the definitional requirements of overt acts are alleged elsewhere in the indictment. In *Ben Zvi*, where the timeliness of an indictment was at issue, the government argued that a certain act alleged in the indictment could meet the timely overt act requirement even though it was not specifically alleged as an overt act. 242 F.3d at 97. The Second Circuit never reached the issue because the timely act relied upon by the government was not an overt act that could be attributed to the defendant or any co-conspirators. *Id.* In discussing the issue, the Court, however, appears to suggest that such allegations could qualify as overt acts to satisfy the statute of limitations. *Id.* The Court of Appeals for the Sixth Circuit, in *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999), has expressly so held. It found that the government's failure to list a timely overt act in the indictment was "a pleading defect, and nothing more [and] should not bar the prosecution of the defendants when a reading of the indictment as a whole gives notice that the conspiracy lasted" through the date listed in the conspiracy count of the indictment. Here, the original indictment put defendants on notice of a timely conspiracy and of acts which would qualify as overt acts even though not identified as such. Therefore, the court finds that Count One of the original indictment was timely and validly pending at the time the Second

7

Superseding Indictment was filed.[3]

Defendants next argue that Count One of the Second Superseding Indictment cannot relate back to the date of the original indictment because it improperly broadens the conspiracy by: (1) adding a new overt act; (2) including defendants' submission of allegedly fraudulent family application forms to the NYSDOE in the "Scheme to Defraud" section of the indictment; (3) alleging a larger amount of fraudulently obtained funds than listed in the original indictment; (4) extending the scope of the fraud to include all of the students claimed on the reimbursement claim forms; and (5) relying on evidence of new acts that the first grand jury did not have.[4] Defs.' Motion to Dismiss Superseding Indictment ("Defs.' Br.") at 9-10.

In upholding the addition of an overt act to a superseding indictment, the Court, in *Salmonese*, stated that the "same standard of review applies to overt acts as to any other aspect of a superseding pleading, i.e. whether the new acts materially broaden or substantially amend the original pleading." 352 F.3d at 623. The addition of the December 27, 2000 overt act relates to the same conspiracy charged in the original indictment – defrauding the School Breakfast and Lunch Program – and does not broaden the scope of that alleged conspiracy. As previously stated, it was clear in the original indictment that criminal acts well within the limitations period were charged. Moreover, the original indictment provided defendants with fair and adequate notice that they would

---

[3] In light of this conclusion, the court need not reach the issue described in footnote 2 of *Ben Zvi*, 242 F.3d at 98, whether, in the absence of a dismissal, an indictment is "validly pending" even if it contains a statute of limitations pleading defect.

[4] Defendants do not argue that changing the end date of the conspiracy from September 1, 2001 to July 2001 precludes relation back, nor could they, because the Second Circuit has held that there is no obstacle to relation back when a superseding pleading narrows, rather than broadens the original charges. *See Salmonese*, 352 F.3d at 622; *Grady*, 544 F.2d at 602.

have to answer to charges of conspiring to defraud the School Breakfast and Lunch Program as late as September 1, 2001.[5]  The conspiracy charged in the Second Superseding Indictment relies on the same statute and contains the same elements.  The Second Superseding Indictment also relies on essentially the same evidence, including the alleged fraudulent family application forms that serve as the basis for Counts Three, Four, and Five that were turned over to a NYSDOE field inspector on December 27, 2000.  Finally, defendants will not be exposed to greater criminal penalties.  Thus, the addition of the December 27, 2000 overt act does not impermissibly broaden the scope of the conspiracy.

Defendants' argument  that adding their submission of allegedly fraudulent family application forms to the NYSDOE in the "Scheme to Defraud" section of the indictment impermissibly broadens the scope of the conspiracy is also without merit.  These allegedly fraudulent applications directly relate to the conspiracy charged in the original indictment, as they are part of the "core of criminality."  *See Salmonese*, 352 F.3d at 619; *Frank*, 156 F.3d at 338.  These forms are the basis for YGA's participation in the School Breakfast and Lunch Program and are also the subject of Counts Three, Four, and Five of the indictment.  The original indictment provided defendants with notice that these forms would be used to prove their participation in the alleged conspiracy.  The inclusion of defendants' submission of family application forms to the NYSDOE in the introductory paragraphs of the indictment simply adds further detail to the conspiracy by demonstrating the means by which defendants sought to achieve their overall objective to defraud the School Breakfast and Lunch Program.

---

[5] In fact, all of the substantive counts in the original indictment included the September 1, 2001 date.  *See* Indictment ¶¶ 19, 21, 23, 25.

Defendants' argument that changing the amount defendants received as reimbursements for meals during the July 2000-June 2001school year from $5,506 to $16,469 impermissibly broadens the scope of the conspiracy is also rejected. Again, there is no question that defendants received sufficient notice of the charges against them by way of the original indictment, and no new charges are brought. That the government changed the dollar figure of reimbursements to defendants during the period July 2000-June 2001, at best, reflects a minor change in the indictment.

Similarly without merit is defendants' argument that extending the scope of the fraud to include all of the students claimed on the reimbursement claim forms broadens the conspiracy. The original indictment stated that, at various times between July 1997 and June 2001, YGA submitted claims for between 71 and 120 students; however, YGA "never had in excess of 80 students enrolled." Indictment ¶ 13. The Second Superseding Indictment changes the language to "at no point during the period from July 1997 through July 2001 did Yeshiva Gedolah Academy have as many enrolled students as was claimed on these forms submitted for reimbursement." Second Superseding Indictment ¶ 15. Defendants argue that this change broadens the conspiracy because it expands the fraud from the "total student enrollment claimed on the forms" to "the number of students enrolled as participants." The court is not persuaded. While the language is different, the charge is the same – that defendants submitted claims for more students than were in attendance. The change in the language does not broaden the scope of the conspiracy charged.

Finally, defendants argue that the Second Superseding Indictment is based on "newly discovered" evidence that the first grand jury did not have, namely evidence of YGA's receipt of a reimbursement check, dated November 20, 2000, in the amount of $1,280.56, and evidence of its receipt of bulk food items through July 2001. The government rejects defendants' characterization
10

of this evidence as "newly discovered." The government contends that, although it did not come into possession of the specific documents until March 2007, it did have spreadsheets showing defendants' receipt of these items, which were provided by the BJE and made available to the first grand jury; the only difference in the evidence that was presented to the grand juries, the government argues, is in form.

In any event, even if characterized as "new evidence," defendants cite no authority for their claim that the government was not permitted to present such evidence to the grand jury in support of a superseding indictment. Nor is the court aware of any authority suggesting that the government is so constrained. Therefore, defendants' argument that they should be permitted to obtain the minutes of the original grand jury proceedings to determine what evidence was before the grand jury that originally indicted them is without merit. As is clear from the cases described above, in particular *Salmonese*, so long as the Second Superseding Indictment did not "materially broaden or substantially amend the original charges," no error would arise from the circumstance that it was based upon information newly provided to the grand jury. Rather, the use of different evidence is merely one factor to be considered. Especially given the slightness of the difference here, that factor does not warrant the conclusion that the Second Superseding Indictment impermissibly broadened the charges. The original indictment provided defendants with fair and adequate notice of the charges against them, and they suffered no prejudice from the change.

In sum, the court finds that Count One of the original indictment was timely and validly pending and that the Second Superseding Indictment does not "materially broaden or substantially amend the original charges." Count One of the Second Superseding Indictment therefore relates back to the date of the original indictment and is timely.

**B. Count Two**

Count Two of the Second Superseding Indictment charges that, between May 1997 and July 2001, defendants defrauded the School Breakfast and Lunch Program, in violation of 42 U.S.C. § 1760(g). Second Superseding Indictment ¶ 21. The government superseded Count Two solely to narrow the end date of the receipt of fraudulently obtained funds and property from September 1, 2001 to July 2001, a date which is still within the statute of limitations. The government superseded ***before*** there was a dismissal,[6] and the original indictment was, on its face, within the limitations period. As previously discussed, there is no reason that the government cannot supersede to give an earlier end date to the crime, as such a change does not alter the essential elements of the charge. *See Salmonese*, 352 F.3d at 622; *Grady*, 544 F.2d at 602.

Defendants further argue that the government has not shown that the second grand jury had evidence that the funds and property were fraudulently obtained and misapplied by defendants for personal use, as required to sustain Count Two. This argument, as a challenge to the indictment, is without merit. The grand jury indicted defendants for receipt of fraudulently obtained property. Whether the government can prove the elements of this charge is an issue of proof which will be resolved at trial.

**C. Counts Three, Four, and Five**

Counts Three, Four, and Five of the original indictment charged that, on or about September 1, 2001, defendants made materially false, fictitious and fraudulent statements and representations

---

[6] The government's description of the court's earlier action on this count as a dismissal and the defendants' description of the court's earlier action as a provisional dismissal are both incorrect. As I have repeatedly explained to counsel, on the earlier motion, I merely raised questions and requested further briefing.

12

in a matter within the jurisdiction of the Executive Branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2). Indictment ¶¶ 20-25. These counts were dismissed as time-barred when the government acknowledged that the (timely) September 1, 2001 date was an error, and that the date on the documents referenced was actually the (untimely) September 1, 2000 date. However, prior to the dismissal of these counts, the government argued that the date of the crime was the (timely) December 27, 2000, the date when the fraudulently prepared family application forms were turned over to the NYSDOE field inspector.

Counts Three, Four, and Five of the Second Superseding Indictment charge that the defendants made materially false, fictitious and fraudulent statements and representations on or about December 27, 2000. Second Superseding Indictment ¶¶ 22-27. If the government had superseded prior to the court's dismissal of these counts of the original indictment, the court would have held the new charges did not "materially broaden or substantially amend the original charges" because the Second Superseding Indictment simply corrects the date of the alleged false statements from September 1, 2001 to December 27, 2000. Contrary to defendants' argument, this correction does not alter the charge. The original indictment made clear that the government sought to prove that defendants made materially false, fictitious and fraudulent statements to the USDA. A necessary step in "making" these statements, which is implicit in the original indictment, is that, at some point, the statements were communicated to the USDA. All that the Second Superseding Indictment does, by way of change, is identify the date of this communication as December 27, 2000.

However, since these counts were dismissed prior to the government's having filed the Second Superseding Indictment, the court must now determine whether, as defendants argue, 18

U.S.C. § 3288 precludes the government from reindicting these counts. That statute provides:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information . . . which new indictment shall not be barred by any statute of limitations. This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.

Defendants rely on the last sentence of 18 U.S.C. § 3288 to support their argument that Counts Three, Four, and Five of the Second Superseding Indictment are barred by the statute of limitations.

In *United States v. Clawson*, 104 F.3d 250 (9th Cir. 1996), the original indictment, which was returned on June 10, 1993, charged that the defendant engaged in conspiracy to commit mail fraud. The indictment alleged overt acts prior to June 10, 1988, outside the statute of limitations, and after July 5, 1988, a date within the statute of limitations but after the defendant was found to have withdrawn from the conspiracy. The indictment did not allege overt acts between June 10, 1988 and July 5, 1988, a period of time within the limitations period. Therefore, the district court dismissed the indictment. By the time the government obtained a superseding indictment, which alleged overt acts between June 10, 1988 and July 5, 1988, the statute of limitations had already expired. The defendant moved to dismiss the indictment, arguing that the government is not entitled to the sixth-month grace period to reindict, as provided by the savings clause in § 3288, because the original indictment was dismissed for failure to comply with the statute of limitations.

The Ninth Circuit rejected the defendant's argument that the last sentence of § 3288 prevented the government from reindicting the defendant. Construing this sentence, the Court held that "this last sentence cuts off the six-month grace period *only* where the defect – whether it's a

limitations problem 'or some other' problem – is not capable of being cured." *Id.* at 252 (emphasis added). The Court went on to state that when, but for the government's failure to allege the exact elements of the crime, or some other technicality, "a valid indictment could have been brought in a timely fashion; the six-month grace period merely allows the government to do what it had a right to do in the first place." *Id.* The Court of Appeals for the Second Circuit has not addressed the 1988 amendment to § 3288 or the Ninth Circuit's analysis of the statute in *Clawson*. This court finds *Clawson*'s analysis persuasive.[7] It is noteworthy, however, that the Second Circuit's conclusion in *Salmonese*, that proof of an unalleged overt act can satisfy the statute of limitations provided the

---

[7] The legislative history of 18 U.S.C. § 3288 supports this court's conclusion, in keeping with *Clawson*'s analysis, that the government is entitled to a six-month period to reindict defendants. Prior to the 1988 amendments, the statute provided, in relevant part:

> Whenever any indictment is dismissed for any error, defect, or irregularity with respect to the grand jury, or . . . is found otherwise defective or insufficient for any cause after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment . . . which new indictment shall not be barred by any statute of limitations.

In *United States v. Peloquin*, 810 F.2d 911, 912 (9th Cir. 1987), the Ninth Circuit interpreted (former)18 U.S.C. § 3288 as precluding the government from reindicting the defendant to cure a violation of the Speedy Trial Act because such an error did not render the indictment "defective or insufficient." Writing for the Court, Judge Kennedy, now Justice Kennedy, stated, "[t]he government argues that there are policy reasons for not giving defendants the chance to wiggle off the hook because of Speedy Trial Act dismissals. This may be so. But we are not in the business of drafting statutes. This task we leave to Congress." *Id.* at 913.

In 1988, apparently in direct response to *Peloquin*, Congress amended § 3288, including the addition of the last sentence. *See* 134 Cong. Rec. S17360-02 (daily ed. Nov. 10, 1988). In setting forth a detailed analysis of the Anti-Drug Abuse Act of 1988, of which this change to § 3288 was a part, Senator Joseph Biden, then Chairman of the Senate Judiciary Committee, stated, "[t]he reason a charge is dismissed (unless the reason for the dismissal would independently bar further prosecution such as a dismissal on grounds of double jeopardy or a dismissal 'with prejudice' under a statute) should not determine whether the government is given additional time to bring a new prosecution." *Id.*

15

defendant has fair notice of the "core of criminality" to be proved at trial, is entirely compatible with the Ninth Circuit's analysis of § 3288 in *Clawson*. That analysis would allow a superseding indictment, after dismissal of an indictment, so long as the defendant "was charged within the statutory period with the exact crime for which he could have been prosecuted had there not been a defect [*i.e.* the failure to identify an overt act within the statute of limitations] in the indictment." *Clawson*, 104 F.3d at 252.

Here, the government could have filed its superseding indictment in November 2006, when it first alerted the court to the error in dates. As stated above, under such circumstances, the court would have found that the superseding indictment did not "materially broaden or substantially amend the original charges" and therefore related back to the date of the original indictment. That the court dismissed Counts Three, Four, and Five because of a curable defect in the original indictment did not preclude the government from reindicting defendants within the six-month grace period under 18 U.S.C. § 3288. *Cf. United States v. Grace*, 455 F. Supp. 2d 1113, 1121 (D. Mont. 2006) (holding that 18 U.S.C. § 3288 did not provide the government with the six-month grace period because the dismissed count was already time-barred at the time the original indictment was filed, and nothing could cure that defect). Certainly, here, where the original indictment as a whole gave defendants adequate notice, both of the "core of criminality" and the outside dates of their alleged criminal conduct, there seems no sound reason that the government should not be entitled to the six-month grace period to reindict defendants pursuant to 18 U.S.C. § 3288. Defendants argue that this interpretation gives the government incentive to indict first and investigate later. The court finds this argument too speculative a basis for rejecting the *Clawson* analysis. Since Counts Three, Four, and Five of the Second Superseding Indictment do not "materially broaden or substantially

16

amend the original charges," the Second Superseding Indictment relates back to the date of the original indictment and is therefore timely.

### III.  CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Counts One through Five of the Second Superseding Indictment is denied.  Defendants' request for the production of grand jury minutes is also denied.

**SO ORDERED.**

  **/s/ *Nina Gershon*** 
**NINA GERSHON**
**United States District Judge**

Dated: July 25, 2007
　　　　Brooklyn, New York